IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-01380-RBJ-BNB

AMERICAN FAMILY INSURANCE COMPANY, a Wisconsin corporation,

Plaintiff,

v.

APARTMENT BUILDERS, LP
ROESSNER & ROESSNER, INC.

Defendants.

---

## ORDER

---

This matter is before the Court on defendant Apartment Builder's Motion for Partial

Summary Judgment [docket #33] and plaintiff American Family Insurance Company's Motion

for Summary Judgment [#34]. For the reasons set forth herein, both motions are denied.

### Facts

Apartment Builders was the general contractor on the Inverness and Aurora Town Center

apartment construction projects. Apartment Builders in turn contracted with defendant Roessner

& Roessner ("R&R") to perform roofing, gutters, downspouts, waterproofing and other work.

Apartment Builders later determined that R&R's work was faulty; terminated R&R from both

projects; and hired third parties to investigate, repair and replace R&R's work as appropriate.

Apartment Builders demanded arbitration to resolve its claim against R&R for the expenses it

incurred as a result of its faulty workmanship. On May 19, 2011 an arbitrator found that R&R

was in breach of contract on both projects because of deficient work and failure to pay its

suppliers and awarded Apartment Builders $849,219 on the Inverness project and $79,444 on the

1

Aurora Town Center project.  On August 8, 2011 the arbitrator awarded Apartment Builders

$116,279.80 in interest, $50,339.50 in costs, and $10,072.25 in attorneys' fees.  R&R apparently

has not paid any of these amounts.[1]

The American Family Mutual Insurance Company had issued a Commercial General

Liability ("CGL") insurance policy to R&R.  By endorsement Apartment Builders was named as

an additional insured.  American Family now seeks a declaration that the insurance policy does

not cover the arbitration awards.  Apartment Builders counterclaims for a declaration that the

policy does provide coverage and, pursuant to the requested declaration, for damages.

Apartment Builders has moved for partial summary judgment on the issue of indemnification,

and American Family seeks summary judgment dismissing the case.

**Standard**

The Court may grant summary judgment if "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

moving party has the burden to show that there is an absence of evidence to support the

nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving

party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  A

fact is material "if under the substantive law it is essential to the proper disposition of the claim."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The Court will examine the factual record and make reasonable inferences therefrom in the light

---

[1] R&R is a defendant in this case and was served with the summons and complaint.  [#8].  It did not respond to the
complaint, and the Clerk of Court entered a default pursuant to Fed. R. Civ. P. 55(a) [#19].

most favorable to the party opposing summary judgment.  *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

The parties both agree that Colorado's substantive law will govern the interpretation of the insurance policy language.  *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426-27 (1996).  Under Colorado law, a court must construe insurance policies using general principals of contract interpretation.  *See Hecla Mining Co. v. N.H. Ins. Co.,* 811 P.2d 1083, 1090 (Colo. 1991).

**Conclusions**

**I.   STANDING.**

The policy at issue utilizes a standard Comprehensive General Liability Coverage Form [#34-24].  Liability insurance provides the insured with a defense and indemnity against claims by a third party, which is why it is referred to as "third party" insurance.  Thus, the policyholder, R&R, could demand coverage under the policy for a defense against the third-party claim against it pursued by Apartment Builders in arbitration (which apparently was provided) and indemnity against Apartment Builders' arbitration judgment.  Whether R&R has pursued an indemnity claim against American Family is unknown to me and is not a matter presented in this case. R&R likewise could have assigned its claim against American Family to Apartment Builders. That too has not occurred so far as the Court has been informed.

Apartment Builders argues, however, that it has standing as a judgment creditor to pursue R&R's insurance coverage claim.  I agree.  Section IV, Commercial General Liability Conditions, paragraph 3(b) provides, in pertinent part:

> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.

[#34-24] at 8.  This provision gives Apartment Builders, a final judgment creditor, the right to sue American Family to obtain whatever liability benefits R&R has under the policy.

Apartment Builders also argues that it is entitled to coverage because it was an additional insured pursuant to an endorsement to the policy.  As an additional insured Apartment Builders, like R&R, is insured for sums Apartment Builders becomes legally obligated to pay for property damage, subject to the policy's other terms.  To my knowledge there has been no claim or suit against Apartment Builders by a third party such as by the owner of the premises.  There has been no determination that Apartment Builders is legally obligated to pay any sum to a third party.  Apartment Builders argues that the "legal obligation to pay" requirement is satisfied by its common law duty to mitigate damages, i.e., to repair or replace its subcontractors' faulty workmanship in order to avoid a third party suit and judgment.  Because I have determined that Apartment Builders has a direct right to sue American Family as a judgment creditor, I need not reach or decide the alternative "additional insured" theory for summary judgment purposes. However, please refer to my discussion of Apartment Builders' claim for attorney's fees in this case, *infra* section II. C.

## II.     IS THERE COVERAGE UNDER THE POLICY?

As with any insurance claim, one must look first to see whether the policy's coverage grant covers the claim; then consider whether any of the policy's exclusions apply; and finally consider whether any of the policy's exceptions to the exclusions nullify the application of the exclusion.

A. **The Policy's Coverage**.

1. General liability insurance coverage.

The insuring agreement in this standard-form CGL policy [#34-24] provides that American Family "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* at 1, § I.A.1.a. The insurance applies to property damage that occurs during the policy period caused by an "occurrence." *Id.*, § I.A.1.b. An "occurrence" is "an accident, including continuous or repeated exposures to substantially the same general harmful conditions." *Id.* at 10, § V.13.

Apartment Builders' claim is that faulty workmanship by R&R or R&R's subcontractors caused Apartment Builders to sustain property damage. Whether property damage caused by faulty workmanship of a subcontractor constitutes an "occurrence" was answered in *Greystone Construction, Inc. v. National Fire & Marine Ins. Co.,* 661 F.3d 1272 (10th Cir. 2011). There is an occurrence if (1) the damage was not caused by purposeful neglect or knowingly poor workmanship, and (2) the damage was to non-defective portions of the subcontractor's work or to third-party property. *Id.* at 1286-87.

American Family does not suggest that damage resulting from the work of R&R or its subcontractors was caused by purposeful neglect or knowingly poor workmanship. The damage was caused by faulty workmanship resulting from negligence. Therefore, if the damage was to non-defective portions of the subcontractors' (or sub-subcontractors') work or to third-party property, and if the damage occurred during the policy period, then there is insurance coverage for such damage unless an exclusion applies. The policy

extended from March 24, 2007 to February 24, 2009 but was also defined to include "any continuation, change or resumption of that . . . 'property damage' after the end of the policy period." Policy [#34-24] at 1, § I.A.1.c.

    2.  <u>Products-Completed Operations.</u>

In Section V of the policy ("Definitions"), the "products-completed operations hazard" is defined to include property damage occurring away from the insured's premises and arising out of "your work," except work that has not yet been completed. [#34-24] at 9.  Work is deemed to be completed "when all of the work called for in your contract has been completed." *Id.*

Nowhere in the coverage section of the policy does one find explicit coverage for the products-completed operations hazard.  However, when one looks at the limits of the policy's coverage, one finds that there are separate $2 million limits for general liability (the coverage grant discussed above) and for products-completed operations.  How the latter coverage arises and whether it might apply in this case can only be understood in the context of certain policy exclusions, discussed later in this order.

Suffice it to say that there potentially is coverage either under the basic coverage grant or the products-completed operations hazard or both.

    **B.  <u>Exclusions and Exceptions to Exclusions.</u>**

American Family's motion [#34] cites five exclusions.  *Id.* at 13-15.  I will address them in the order in which they appear in the policy.

1.   Exclusion a: Expected or Intended Injury.

Property damage that is expected or intended from the standpoint of the insured is excluded.  There does not appear to be any evidence that R&R or its subcontractors expected or intended to cause property damage.  This exclusion is irrelevant to this case.

2.   Exclusion b: Contractual Liability.

The policy excludes property damage for which the insured is required to pay damages by reason of assumption of liability in a contract.  The arbitrator found that R&R breached its contractual obligation to Apartment Builders.  However, the exclusion excepts liability for damages (1) that the insured would have in the absence of the contract, and (2) assumed in an "insured contract."  An "insured contract" includes a contract under which the insured assumes the "tort liability" of another party to pay for property damage to a third person or organization.

It is implicit in a finding of faulty workmanship that R&R and/or its subcontractors were negligent in the performance of their work.  R&R would have been liable for damages resulting from its negligence in the absence of the contract. Accordingly, the first exception negates the exclusion.

It is not necessary to determine whether the second exception also applies. However, because Apartment Builders emphasizes the second exception in its motion, I will simply state that, in my view, the second exception likely does not apply.  There is no indication that Apartment Builders incurred "tort liability" to a third person.

3.   <u>Exclusion j: Damage to Property</u>.

This exclusion lists six categories of excluded property damage, only two of which are argued to be relevant to this case.  Categories (5) and (6) exclude the following types of property damage:

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'

As its terms indicate, paragraph (5) of the exclusion applies to operations in progress.  I conclude that it does not apply to the facts of this case.  However, paragraph (6) does have potential application here.  It excludes from the policy's basic coverage property damage to property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.  "Your work" means "work or operations performed by you or on your behalf." Policy [#34-24] at 11, § V.22.a.  There is an exception to the exclusion for property damage included in the products-completed operations hazard.

I must try to construe this exclusion so as to give effect to all provisions so that none will be rendered meaningless.  *Greystone,* 661 F.3d 1283.  Accordingly, I conclude that exclusion j(6) applies to the restoration, repair or replacement of specific property on which R&R or any of its subcontractors was performing work unless that damage falls within the products-completed operations hazard.  The products-completed operation hazard, as its name applies, only covers

completed work.  Accordingly, damage caused by faulty workmanship to property on which R&R or a subcontractor to R&R was performing work is not covered if the work has not been completed.  *See Farmington Cas. Co. v. Duggan,* 417 F.3d 1141, 1143 (10th Cir. 2005).

There are at least four types of property damage potentially in play in this case: (1) damage to non-defective portions of the work of R&R's subcontractors (but not R&R's work, if any, because of exclusion "l" discussed below); (2) damage to property on which R&R or its subcontractors were performing work, unless the products-completed operations hazard applies; (3) third-party property; and (4) loss of use of the apartment complex(es).  Exclusion j(6) applies, if at all, to the second category.

4.  Exclusion l: Damage to Your Work.

This applies to property damage "to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard."  It does not apply if "the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."  Apartment Builders states that all of R&R's work was performed by subcontractors on R&R's behalf.  [#33-1] at 6, ¶10.  American Family in substance does not appear to dispute that.  *See* Plaintiff's Response [#41] at 4, ¶10.  Therefore, exclusion "l" does not apply.

5.  Exclusion m: Damage to Impaired Property or Property Not Physically Injured.

This exclusion excludes damage to "impaired property or property that has not been physically injured arising out of: (1) a defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work,'; or (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

"Impaired property" means "tangible property other than 'your property' or 'your work,' that cannot be used or is less useful because:

a. It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by

a. The repair, replacement, adjustment or removal of 'your product' or 'your work;' or

b. Your fulfilling the terms of a contract or agreement."

There is an exception to this exclusion:

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

I think that this exclusion means that the loss of use of the apartment complex(es), caused by the incorporation into them of the faulty work of R&R or its subcontractors, but which use was restored by the repair, replacement or removal of the faulty work, is excluded <u>unless</u> the exception to the exclusion applies. The exception applies if the loss of use of the apartment complex(es) arose out of a sudden and accidental physical injury to the work of R&R or its subcontractors after that work was put to its intended use.

As applied to the facts of this case, this exclusion might exclude damages for loss of use of the apartment complex(es). However, other than citing the exclusion, American Family's motion does not discuss it. In its response to Apartment Builder's motion American Family mentions the exclusion but again provides no meaningful analysis. *See*

Response [#41] at 38-39.  Perhaps American Family too has trouble understanding this exclusion.

### C.  **Apartment Builders' Arguments.**

I turn, then, to whether either party has established coverage or lack of coverage beyond a genuine dispute of fact.  Apartment Builders argues that it is "undisputed" that property damage covered by the CGL policy occurred.  I disagree that this is undisputed. *Compare, e.g.,* American Family's response to Apartment Builders' motion [#41], "additional material undisputed facts" ¶42, *with* Apartment Builders' response to American Family's motion [# 42], ¶44; and *compare* Apartment Builders' brief in support of its motion [#33-1], "statement of undisputed facts" ¶¶17-18, *with* American Family's response [#41] at 5, ¶¶17-18.

It appears to me to be likely that at least some of the damage is "property damage" within the meaning of the policy, and that at least some of it occurred within the policy period as defined in the policy.  However, having reviewed the parties' voluminous briefs and attachments, I cannot conclude as a matter of law that the specific nature of the property damage or whether the damage occurred during the policy period have been established as being beyond genuine dispute.

That is as far as the Court must go for purposes of summary judgment.  However, for the parties' future guidance I will also briefly mention Apartment Builders' additional argument that it is entitled to an award of attorney's fees incurred in the present case.  It proposes two bases for such an award.  First, Apartment Builders suggests that it can claim attorney's fees under the clause that obligates American Family to pay "all reasonable expenses incurred by the insured at our request to assist us in the investigation

or defense of the claim or 'suit.'" CGL Policy [#34-24] at 6, Supplementary Payments ¶1.d.  To prevail on that argument Apartment Builders would have to (1) prevail on its claim that it has coverage as an additional insured because it was legally obligated to a third party to incur repair and replacement costs, even though there has been no third-party claim against it, and (2) prevail on its theory that its attorney's fees in this case may be awarded under the "expenses incurred by the insured at our request" clause notwithstanding *Allstate Insurance Co. v. Huizar,* 52 P.3d 818 (Colo. 2002) and *Bernal v. Lumbermens Mut. Cas. Co.,* 97 P.3d 197, 203 (Colo. App. 2003) (decided in the context of first party insurance claims).  That is a tall order.

Alternatively, Apartment Builders argues that its attorney's fees in this case are within the basic coverage grant, i.e., all sums R&R becomes legally obligated to pay as damages because of property damage.  The logic of this theory is that Apartment Builder's contract with R&R obligated R&R to indemnify Apartment Builders against any expense that is in any manner related to R&R's activities; therefore, R&R is legally obligated to pay Apartment Builders' attorney's fees in pursuing the coverage claim; and therefore the policy covers Apartment Builders' attorney's fees in this case.

R&R's obligation under its contract with Apartment Builders to pay Apartment Builders' attorney's fees was addressed in the arbitration.  The arbitrator construed the contractual language on which Apartment Builders now relies to be an indemnity provision that applies when a third party sues or makes claims against Apartment Builders for acts and omissions attributable to R&R.  Order Re: Interest, Costs and Attorney Fees [#34-21] at 2.  Because no third party claim had been asserted or suit filed, the arbitrator denied an award of attorney's fees under the contract.  *Id.*  Apartment

Builders in substance asks this Court to disagree with that part of the arbitrator's decision, even though in every other respect it supports the arbitrator's decisions. I am not prepared to do that.

In short, although I need not reach and decide at this time Apartment Builders' potential entitlement to recover its attorney's fees incurred in this case, I advise the parties of my present thinking that Apartment Builders faces an uphill battle to persuade the Court to its position on that issue.

### D. **American Family's Arguments.**

American Family offers six arguments as to why its policy does not provide coverage:

1. R&R never completed all of the work called for in its contracts.

If the work was not completed, then property damage resulting from the work is not within the products-completed operations hazard's coverage. This relates to the possible application of exclusion j(6). I find that there is a genuine dispute of fact as to whether the work of R&R or its subcontractors was "completed." *Compare* [#41] at 6,¶4 *with* [#42] at 2, ¶4.

More specifically, Apartment Builders maintains that R&R completed its contracted-for work. During the arbitration Apartment Builders' Vice President of Construction, Terry Lynn Bailey, testified that the roof was 100% complete. [#42-2] at 81:5-16. Apartment Builders further argues that Mr. Bailey's statements regarding the "replacement" of the tile roofing only make sense in the context of completed work. *Id.* at 95:14-18; 100:1-10. Jason Madley, Apartment Builders' assistant superintendent, testified that the buildings were occupied, and "[e]verything is 100 percent complete,

13

turned over, you've got your – your signed certificate of occupancy from the City. There's no construction to be done unless there's, you know, a punch list that comes out at a later date." [#42-3] at 356:9-16. Finally, Apartment Builders points to the arbitrator's award, where the contract remainder due to R&R under both contracts was credited against the total damage award.

In contrast, when asked if R&R's work at Inverness was ever completed and accepted Mr. Bailey replied "No, it wasn't." [#43-1] at 75:2-4. When asked about whether there was more work to be done in October 2008, Mr. Bailey testified "[t]he thing that made me most nervous is not knowing what was out there. I mean, I could see some things that – that were not completed and the quality of work that – that was allegedly completed." [#43-1] at 70:17-23. Glen Roessner, the president of R&R also replied "No" when asked if he ever completed the work at Inverness or Aurora Town Center. [#43-2] at 505:12-17. American Family notes that Apartment Builders' hearing brief argued that R&R did not complete its work. [#41] at 6, ¶4. In Apartment Builder's opening statement counsel stated "[i]t was Apartment Builders [sic] goal throughout to get Roessner to complete its work, to not have to terminate them…They didn't want to spend all the money they ended up having to spend to fix this job." [#43-1] at 21:23-25; 22:2-3. Apartment Builders' counsel further stated that R&R was fired because they "would represent that work was complete and, when they looked at it, they found that it wasn't." *Id.* at 22:20-21. American Family cites numerous other excerpts from arbitration testimony –too numerous to repeat here – that support its argument.

Despite both parties' vehement arguments to the contrary, the evidence fails to demonstrate a clear conclusion, beyond genuine dispute, either way. Accordingly,

whether exclusion j(6) might apply to exclude some portion of the claim cannot be resolved on a motion for summary judgment.

    2.   The faulty workmanship exclusions operate to exclude coverage for the
         damages awarded in the Arbitration.

This concerns exclusions "j," "l" and "m."  For the reasons discussed above, there is a genuine dispute of material fact concerning whether the products-completed operations hazard has been triggered, which in turn affects exclusion j(6).  I have determined that exclusion l does not apply.  I think that exclusion m probably applies to loss of use damages, but American Family has yet to explain or offer any law concerning the application of this exclusion.

    3.   The cost of repairing or removing R&R's work is not property damage.

Under *Greystone,* damage to the non-defective portion of the insured's faulty work does come within the coverage grant.  There are genuine issues of material fact concerning the nature of the property damage that occurred and that was covered by the arbitration judgment.

    4.   Damages that occurred after American Family's last policy expired on
         February 24, 2009 are not covered.

Property damage that occurs during the policy period includes "any continuation, change or resumption of that damage after the end of the policy period."  The timing of the occurrence of the property damage in this case presents genuine issues of material fact that are disputed.

    5.   The contractual liability exclusion excludes coverage for contractual liability.

I disagree.  It does not exclude coverage in this case.

6. <u>The additional insured endorsement does not provide coverage to Apartment Builders.</u>

For the reasons set forth above, I am inclined to agree. This is, in any event, only potentially relevant to Apartment Builder's claim that it is entitled to recover its attorney's fees incurred in this case. I need not finally decide the attorney's fee issue today. Today the Court need only decide that summary disposition of this case is not appropriate.

**E. Summary of Fact Disputes**

Genuine issues of fact that are disputed and require trial to resolve include, but are not necessarily limited to, the following: (1) did the faulty workmanship of R&R's subcontractors cause property damage to their non-defective work, or to property on which they were performing work, or to third-party property; (2) did the damage occur during the policy period as defined in the policy; (3) was the work of R&R and its subcontractors "completed;" (4) to what extent, if any, was the faulty work performed by R&R itself as opposed to its subcontractors; and (5) ultimately, what part of the arbitration award, if any, falls within the policy's coverage and is not excluded.

**<u>Order</u>**

For the reasons set forth above, motions #33 and #34 are DENIED.

DATED this 29th day of October, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge
